**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 15 |
| Black Press Ltd., *et al.*,[1] | Case No. 24-10044 (MFW) |
| Debtors in a Foreign Proceeding. | (Joint Administration Requested) |

*MEMORANDUM OF LAW IN SUPPORT OF EX PARTE* **MOTION FOR
PROVISIONAL RELIEF IN THE FORM OF A TEMPORARY RESTRAINING
ORDER, AND AFTER NOTICE AND A HEARING, AN ORDER FOR
PROVISIONAL RELIEF UNDER SECTION 1519 OF THE BANKRUPTCY CODE**

---

[1] The Debtors in these chapter 15 cases, along with the last four digits of each Debtor's federal tax identification number (or BN as applicable), include: Black Press Group Ltd. (BN 8464); Sound Publishing Inc. (TIN 6047); The Beacon Journal Publishing Company (TIN 5666); Black Press Ltd. (BN 4084); Sound Publishing Holding Inc. (TIN 6047); 311773 BC Ltd. (BN 3265); Sound Publishing Properties, Inc. (TIN 6047); Oahu Publications, Inc. (TIN 3529); San Francisco Print Media Company (TIN 0940); Central Web Offset Ltd. (BN 5111); 0922015 B.C. Ltd. (BN 4906); and WWA (BPH) Publications, Inc. (TIN 7876). The location of the Debtors' corporate headquarters and service address is: 15288 54a Ave #208, Surrey, British Columbia, Canada V3S 5X7.

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ........................................................................... 2

II.  FACTUAL BACKGROUND.............................................................................. 5

III.  ARGUMENT AND AUTHORITY ..................................................................... 5

B.  The Temporary Restraining Order is Urgently Needed to Protect the
Debtors' United-States-Based Assets and Restructuring Efforts.......................... 6

C.  The Requested Relief Meets the Standard for a Preliminary Injunction. ............. 9

ii.  There is a Substantial Likelihood of Recognition of the Canadian
Proceedings as Foreign Main Proceedings and Entitlement to
Additional Requested Bankruptcy Code Relief. ...................................... 10

iii.  The Debtors Will Suffer Irreparable Harm Without Provisional
Relief. ................................................................................................... 13

iv.  Provisional Relief Will Benefit Creditors. ............................................... 19

v.  The Public Interest Favors Granting Provisional Relief. ......................... 20

vi.  The Petitions for Recognition Satisfy all the Requirements Under
Section 1515........................................................................................ 23

vii.  The Debtors are Not Required to Provide Security. ................................ 23

viii.  The Requirements of Bankruptcy Rule 1007(a)(4)(B) Should Be
Waived. ............................................................................................... 24

D.  In the Alternative, the Court should Grant the Canadian Court Comity and
Impose Provisional Relief.................................................................................. 24

IV.  CONCLUSION................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re ABC Learning Ctrs. Ltd.*,
    728 F.3d 301 (2013)..................................................................................18

*In re Acerus Pharms. Corp.*,
    No. 23-10111 (Bankr. D. Del. Jan. 31, 2023) ..........................................16

*In re Alert Holdings Inc.*,
    148 B.R. 194 (Bankr. S.D.N.Y. 1992) ........................................................9

*Am. Film Techs, Inc. v. Taritero (In re Am. Film Techs., Inc.)*,
    175 B.R. 847 (Bankr. D. Del. 1994) ..........................................................19

*In re Andrade Gutierrez Engenharia S.A.*,
    645 B.R. 175 (Bankr. S.D.N.Y. 2022)........................................11, 13, 18, 22

*In re Arctic Glacier Int'l Inc.*,
    No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) ....................................16, 20

*In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*,
    91 B.R. 661 (Bankr. S.D.N.Y. 1988).........................................................14

*In re Basis Yield Alpha Fund (Master)*,
    No. 07-12762 (Bankr. S.D.N.Y. Aug. 29, 2007) ......................................17

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*,
    374 B.R. 122. (S.D.N.Y.2007).....................................................................18

*In re CDS U.S. Holdings, Inc.*,
    No. 20-11719 (Bankr. D. Del. July 2, 2020)..............................................20

*In re Cinram Int'l Inc.*,
    No. 12-11882 (Bankr. D. Del. June 26, 2012) ...........................................16

*Cornfeld v. Invs. Overseas Servs., Ltd.*,
    471 F. Supp. 1255 (S.D.N.Y. 1979).......................................................19, 22

*Cunard S.S. Co. Ltd. v. Salen Reefer Servs. A.B.*,
    773 F.2d 452 (2d Cir. 1985)........................................................................20

*In re Curlew Valley Assocs.*,
    14 B.R. 506 (Bankr. D. Utah 1981) ...........................................................15

*In re Daehan Shipbuilding Co., Ltd.*,
  No. 14-12391 (Bankr. S.D.N.Y. Aug. 21, 2014) ....................................................7

*Doctor's Assocs. v. Distajo*,
  107 F.3d 126 (2d Cir. 1997)..............................................................................21

*In re Electro Sonic Inc.*,
  No. 14-10240 (Bankr. D. Del. Feb. 11, 2014) .........................................................7

*In re Energy Coal S.P.A.*
  582 B.R. 619 (Bankr. D. Del. 2018) ...................................................................14

*In re Energy Coal S.P.A.*,
  No. 15-12048 (Bankr. D. Del. Oct. 7, 2015) ........................................................20

*Granny Goose Foods. Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local 70*,
  415 U.S. 423 (1974)...........................................................................................6

*In re Hamilton Square Assocs.*,
  No. 91-14720S, 1992 Bankr. LEXIS 705 (Bankr. E.D. Pa. May 5, 1992).............................14

*In re Hematite Holdings Inc.*,
  No. 20-12387 (Bankr. D. Del. Oct. 1, 2020) ..........................................................16

*Hilton v. Guyot*,
  159 U.S. 113 (1895)..........................................................................................24

*In re Innua Canada Ltd.*,
  No. 09-16362, 2009 Bankr. LEXIS 994 (Bankr. D.N.J. Mar. 25, 2009)....................8, 17, 18

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*,
  412 F.3d 418 (2d Cir. 2005)...............................................................................24

*Kos Pharm., Inc. v. Andrx Corp.*,
  369 F.3d 700 (3d Cir. 2004)...............................................................................9

*Laker Airways Ltd. v. Sabena, Belg. World Airlines*,
  731 F.2d 909 (D.C. Cir. 1984) ...........................................................................24

*In re Lazarus Burman Assocs.*,
  161 B.R. 891 (Bankr. E.D.N.Y. 1993)...................................................................19

*In re Lines*,
  81 B.R. 267 (Bankr. S.D.N.Y. 1988) ....................................................................14

*In re Lone Pine Res. Inc.*,
  No. 13-12487 (Bankr. D. Del. Sept. 26, 2013) .......................................................20

*In re MMG, LLC*,
    256 B.R. 544 (Bankr. S.D.N.Y. 2000) ........................................................................6

*In re Netia Holdings S.A.*,
    278 B.R. 344 (Bankr. S.D.N.Y. 2002) ........................................................................6

*In re NextPoint Fin. Inc.*,
    No. 23-10983 (Bankr. D. Del. July 27, 2023) ................................................6, 16, 20

*In re Nortel Networks UK Ltd.*,
    538 B.R. 699 (Bankr. D. Del. 2015) ...........................................................................9

*Overseas Inns S.A. P.A. v. United States*,
    911 F.2d 1146 (5th Cir. 1990) ..................................................................................24

*In re Pro-Fit Holdings, Ltd.*,
    391 B.R. 850 (Bankr. C.D. Cal. 2008) ..........................................................7, 11, 13

*In re Prudential Lines. Inc.*,
    107 B.R. 832 (Bankr. S.D.N.Y. 1989) ........................................................................6

*Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*,
    281 B.R. 231 (Bankr. D. Del. 2002) .........................................................................19

*Rogers v. Corbett*,
    468 F.3d 188 (3d Cir. 2006) .......................................................................................9

*In re SPhinX, Ltd.*,
    351 B.R. 103 (S.D.N.Y. 2006) ..................................................................................18

*In re The Aldo Grp. Inc.*,
    No. 20-11060 (Bankr. D. Del. June 3, 2020) ......................................................16, 20

*In re Vuitton et Fils S.A.*
    606 F.2d 1 (2d Cir. 1979) ...........................................................................................6

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*,
    Bankr. No. 01-01139, Adv. No. A-01-771, 2008 Bankr. LEXIS 1048 (Bankr.
    D. Del. Apr. 11, 2008) ..............................................................................................12

*In re Yatsen Grp. of Cos. Inc.*,
    No. 21-10073 (Bankr. D. Del. Jan. 27, 2021) ...........................................................16

**Statutes and Federal Procedural Rules**

11 U.S.C. § 1501 ...........................................................................13, 18, 20, 22

11 U.S.C. § 1508 .......................................................................................................23

11 U.S.C. § 1519 .................................................................................................................8

11 U.S.C. § 1520 .........................................................................................................10, 21

Federal Rule of Bankruptcy Procedure 1007 ...............................................................22

Federal Rule of Bankruptcy Procedure 7007.1 .............................................................10

Federal Rule of Bankruptcy Procedure 7065 ...........................................................6, 21

Federal Rule of Civil Procedure 65 ..........................................................................6, 21

**Other Authorities**

Burton Lifland, *Chapter 15 of the United States Bankruptcy Code: An Annotated
    Section-By-Section Analysis* ...............................................................................23

Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 .....................................1

CROSS-BORDER INSOLVENCY AND CONFLICT OF JURISDICTIONS A US-EE
    EXPERIENCE (Georges Affaki, ed. 2007) ...............................................................23

20 N.C. J. INT'L L. & COMM. REG. 629 (1995) ............................................................25

NORTON BANKR. L. & PRAC. 2d § 152:16 (1997-98)....................................................24

Black Press Ltd. ("BP Holdco"), in its capacity as the duly appointed foreign representative (the "Foreign Representative") for the above-captioned debtors (collectively, the "Debtors" or "Petitioners"), each of which are subject of the proceedings (the "Canadian Proceedings") currently pending before the Supreme Court of British Columbia (the "Canadian Court"), initiated pursuant to the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "CCAA"), respectfully files this *Memorandum of Law In Support of Ex Parte Motion for Provisional Relief in the Form of a Temporary Restraining Order, and After Notice and a Hearing, an Order for Provisional Relief Under Section 1519 of the Bankruptcy Code* ("Memorandum of Law") in support of the *Ex Parte Motion for Provisional Relief in the Form of a Temporary Restraining Order, and After Notice and a Hearing, an Order for Provisional Relief Under Section 1519 of the Bankruptcy Code* ("Motion") filed contemporaneously herewith. The Foreign Representative respectfully refers the Court to and incorporates the following into this Motion by reference: (a) the *Verified Petition for (i) Recognition of Foreign Main Proceedings, (ii) Recognition of Foreign Representative, and (iii) Related Relief Under Chapter 15 of the Bankruptcy Code* ("Verified Petition");[2] (b) *Motion of the Foreign Representative for Chapter 15 Recognition and Final Relief* ("Recognition Motion"); the (c) *Declaration of Christopher Hargreaves in Support of the Debtors' Verified Petition for (i) Recognition of Foreign Main Proceedings, (ii) Recognition of Foreign Representative, and (iii) Debtors' Motion for Certain Provisional Relief* ("Hargreaves Declaration"); (d) the *Declaration of Jeremy Bornstein as Canadian Counsel to the Debtors in Support of the Debtors' Chapter 15 Petitions and Requests for Certain Related Relief Pursuant to Chapter 15 of the Bankruptcy Code*

---

[2] Capitalized terms used but not otherwise defined herein shall have the meaning ascribed to them in the Verified Petition, the Initial Order, the Declarations, and the Motion, as applicable.

1

("Bornstein Declaration"); and (d) the *Declaration of Stanley Tarr in Support of the Ex Parte Motion for Provisional Relief in the Form of a Temporary Restraining Order, and After Notice and a Hearing, an Order for Provisional Relief Under Section 1519 of the Bankruptcy Code* ("Tarr Declaration" and together with the Hargreaves Declaration and the Bornstein Declaration, the "Declarations"). In further support of the Motion, the Foreign Representative represents to the Court as follows.

## I.   PRELIMINARY STATEMENT

1.     The Debtors and non-debtors Black Press (Barbados) Ltd., Whidbey Press (Barbados) Inc., Black Press Delaware LLC, and Black Press Group Oregon LLC (collectively, the "Non-Debtor Stay Parties" and together with the Debtors, the "Company"), are the third-largest privately-owned media business in Canada, and specialize in hyperlocal print newspapers, magazines, digital news, marketing and advertising, commercial printing, and parcel delivery services in Canada. Debtors' Canadian services are provided in British Columbia, Alberta, Yukon, Nunavut, and in Canada's Northwest Territories. In the United States, the Debtors operate in the states of Washington, Alaska, and Hawaii (together with the Debtor's Canadian operations, the "BP Business"). As more fully described in the Declarations, partially as a result of declining profits over the last decade on account of cultural shifts and decline in advertising revenue due to the loss of small retailers, and partially because of the Debtors' obligations in connection with the Akron Plan (as defined in the Motion), the Debtors became insolvent and unable to make payments on their funded debt as they came due. Accordingly, the Debtors negotiated in good faith to transact a restructuring and sale process in the Canadian Proceedings involving the going-concern sale of the Debtors' business. The parties believe this process will result in the maximum value and best outcomes for all stakeholders.

2.      On January 14, 2024, the Debtors commenced the Canadian Proceedings under the CCAA to implement an agreed-upon restructuring and commence a sale process under the supervision of the Canadian Court. The same day, the Canadian Court entered an initial order (the "Initial Order") appointing KSV Restructuring Inc. ("KSV", and in its capacity as Monitor, the "Monitor") as Monitor in the Canadian Proceedings and appointed the Foreign Representative to commence these chapter 15 cases under title 11 of the United States Code ("Bankruptcy Code") in order to facilitate the success of the Canadian Proceedings.

3.      On the date hereof ("Petition Date"), the Foreign Representative filed voluntary petitions under chapter 15 the Bankruptcy Code, thereby commencing the Debtors' chapter 15 cases (collectively, the "Chapter 15 Cases").

4.      Also on the Petition Date, the Foreign Representative filed, among other things, (i) the Verified Petition and the Recognition Motion, seeking recognition by this Court of its status as the Foreign Representative and recognition of the Canadian Proceedings as "foreign main proceedings" under section[3] 1517 and certain related relief ("Recognition Order"); and (ii) the Motion, seeking immediate entry of the TRO and, after notice and a hearing, the Provisional Relief Order (the TRO and Provisional Relief Order are referred to herein as the "Provisional Relief").

5.      Significantly, the term sheet between the Stalking Horse Purchaser and the Debtors requires the Debtors to take steps to preserve intact the current business operations of the Company and assets in all material respects. The Provisional Relief (including the TRO) sought pursuant to the Motion are indispensable to effectuate these preservation efforts. With regard to the TRO, an immediate stay is required to, among other things, prevent the Pension Benefit

---

[3] Unless otherwise noted, all statutory references are to the Bankruptcy Code.

Guaranty Corporation ("PBGC") from perfecting a potential security interest and lien in the Debtors' assets in connection with its purported unsecured claim, which is asserted by the PBGC in excess of USD$44.2 million against the Debtors. To the extent the PBGC perfects a lien as described and becomes a secured creditor, it would halt the Debtors' proposed DIP funding and thus the entire sale process contemplated and sought in the CCAA proceedings.

6.      The Motion also seeks interim application in the territorial jurisdiction of the United States of the following charges against the Debtors' assets in priority to other claims in the Canadian Proceedings (e.g., the equivalent of administrative expenses in a chapter 11 case) granted in the Initial Order during the period between the filing of these cases and final recognition: (a) a charge in favor of the Monitor, counsel to the Monitor, and counsel to the Debtors and Foreign Representative ("Administration Charge"); (b) a charge in favor of the directors and officers of the Debtors ("Directors' Charge"); and (c) a charge in favor of the DIP Lender ("DIP Lender's Charge" and together with the Administration Charge and the Directors' Charge, the "Charges"). The Charges are essential to protect the interests of the Debtors as these provide critical parties in the Canadian Proceedings and these Chapter 15 Cases with a right of payment to continue the reorganization of the Debtors without disruptions. *See* Initial Order, ¶¶ 23-25, 32-40. The Debtors' directors and officers are integral to carry out the restructuring efforts, and, under applicable Canadian law, have indemnification rights against the Debtors, such that any judgments obtained against the directors and officers would be a *de facto* judgment against the Debtors.

7.      The Initial Order also stays the continuation or commencement of actions and proceedings against the Debtors, the Non-Debtor Stay Parties, and their directors and officers, including any actions or proceedings that may be brought in these Chapter 15 Cases, to ensure

that dissident creditors, counterparties, or stakeholders cannot bypass the Canadian Proceedings by commencing litigation or taking other actions outside of Canada to obtain a greater recovery than other, similarly situated creditors. *See* Initial Order, ¶¶ 16-19. Without a court order extending the stay within the territorial jurisdiction of the United States, during the gap period between the Petition Date and approval of the Recognition Order, parties in the United States might commence proceedings or take other enforcement action against the Debtors and materially impair their efforts to maximize the value of their assets for the benefit of all stakeholders.

8.      The Canadian Proceedings enable the Debtors to continue to operate their businesses in the ordinary course and in accordance with the Initial Order. Provisional Relief will provide the Debtors with sufficient protection to further the purpose of the Canadian Proceedings and provide significant assistance to the Canadian Court by, among other things, preventing creditors within the territorial jurisdiction of the United States from "racing to the courthouse" to the detriment of the Debtors and their creditors. The Provisional Relief provides the Debtors with the necessary breathing room and stability to effectuate the proposed Canadian restructuring until the Court can conduct the hearing on recognition.

## II.    FACTUAL BACKGROUND

9.      A detailed factual background regarding the Debtors, including their business operations, capital and debt structure, and the events leading to the commencement of the Canadian Proceeding and the filing of these chapter 15 cases, is set forth in the Verified Petition and the Declarations, each of which are incorporated into this Memorandum of Law by reference as if fully set forth herein.

## III.   ARGUMENT AND AUTHORITY

10. For the reasons set forth below, the Foreign Representative satisfies the criteria set forth in the Bankruptcy Code, Bankruptcy Rules, and Federal Rules for provisional relief and a temporary restraining order.

### B. The Temporary Restraining Order is Urgently Needed to Protect the Debtors' United-States-Based Assets and Restructuring Efforts.

11. The Motion seeks an *ex parte* temporary restraining order to protect the Debtors and the Non-Debtor Stay Parties and their assets during the period between the commencement of this case and entry of the Provisional Relief Order. The United States Supreme Court has held that *ex parte* restraining orders may be issued to preserve "the status quo . . . for so long as is necessary to hold a hearing." *See Granny Goose Foods. Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local 70,* 415 U.S. 423, 439 (1974). Rule 65(b) of the Federal Rules, made applicable by Bankruptcy Rule 7065, requires that to obtain an *ex parte* temporary restraining order, the applicant must show that "immediate and irreparable injury, loss or damage would result to the applicant before the adverse party or that party's attorney can be heard in opposition." *In re Vuitton et Fils S.A.* 606 F.2d 1, 4 (2d Cir. 1979). It is well established that dissipation of the estate amounts to irreparable injury. *See In re Netia Holdings S.A.,* 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established . . . that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury."); *In re MMG, LLC,* 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors."); *see also, In re Prudential Lines. Inc.,* 107 B.R. 832, 835 (Bankr. S.D.N.Y. 1989) (granting temporary restraining order where the moving party established a "summary showing of its necessity in order to prevent immediate and irreparable injury").

12.     Courts have not required full or literal compliance with Rule 65(b) requirements in respect of provisional relief under section 1519. For example, provisional relief can be ordered on an *ex parte* basis at case commencement through and pending recognition without the need for a preliminary injunction hearing or the filing of an adversary proceeding. *See In re NextPoint Fin. Inc.*, No. 23-10983, (Bankr. D. Del. July 27, 2023) [D.I. 39] (granting provisional relief through recognition only one day after filing of chapter 15 petitions); *In re Electro Sonic Inc.,* No. 14-10240 (Bankr. D. Del. Feb. 11, 2014) [D.I. 18] (*ex parte* provisional relief ordered to stay actions against U.S. assets of Canadian debtor from chapter 15 case commencement through recognition); *In re Daehan Shipbuilding Co., Ltd.,* No. 14-12391 (Bankr. S.D.N.Y. Aug. 21, 2014) [D.I. 3 & 8] (provisional relief ordered in single step within three days of chapter 15 commencement pending recognition); *see also In re Pro-Fit Holdings, Ltd.,* 391 B.R. 850, 860-65 (Bankr. C.D. Cal. 2008) (applying section 362 provisionally, pending recognition, and noting that because section 362 relief was being sought, no adversary was required and rules applicable to ordinary issuance of injunction were inapplicable).

13.     As previously explained, issuance of an *ex parte* temporary restraining order immediately is critical in these Chapter 15 Cases to prevent the PBGC from exercising remedies against the U.S. Debtors.  Without immediate entry of the temporary restraining order, there is a substantial risk that the PBGC may take actions in respect of its purported USD$44.2 million purported unsecured claim that could create liens on the U.S. Debtors' assets in favor of the PBGC, which liens would prevent the Debtors from having access to DIP Financing vitally necessary to fund their operations, continue the BP Business as a going concern, and pursue the restructuring in the Canadian Proceedings that is designed to maximize the value of their assets for the benefit of all stakeholders. Other creditors of the U.S. Debtors could also exercise remedies

against the U.S. Debtors and their assets by, among other things, terminating contracts, attaching assets, and taking similar actions, which would jeopardize the DIP Financing and restructuring efforts in the Canadian Proceedings.  In short, the temporary restraining order will preserve the status quo by preventing the PBGC or any other creditor or party in interest from exercising remedies until the Court can consider the request for provisional relief.

14.     Without a provisional stay of all proceedings against the Debtors and the Non-Debtor Stay Parties and their assets (including the Litigation (as defined in the Motion)) in the territory of the United States, the Debtors will suffer the same material harm described above and their efforts to restructure through the Canadian Proceedings and maximize the value of their assets will fail. DIP Financing will be lost, there will not be funding for the continuation of the BP Business as a going concern, the PBGC will have the ability to take actions in an attempt to prefer itself at the expense of all other creditors, valuable assets of U.S. Debtors will be subject to enforcement action by U.S. creditors, and other actions may be taken against the U.S. Debtors and their assets in spite of the stay granted under the Initial Order by the Canadian Court.

15.     For example, even though certain of the Debtors' secured lenders have negotiated cooperatively with respect to the in-court restructuring, there are both secured and unsecured creditors who became aware of the Debtors' now-public circumstances and are able to initiate enforcement actions against the Debtors unless the Provisional Relief is granted until the Court can consider recognition. In addition, continuation of existing litigation or commencement of additional litigation against the Debtors or the Non-Debtor Stay Parties in the United States will distract the Debtors' management at a critical juncture in the Debtors' restructuring and decrease funds available for creditor recoveries. Considering the overall significance of the U.S. operations and consolidation of the enterprise, any disruption and substantial harm caused by actions of

creditors or counterparties would not be isolated to the U.S. Debtors, rather it could have grave implications for the Canadian Proceedings and cause the Debtors' restructuring to no longer be viable.

16.     Considering these serious risks of irreparable harm, the Initial Order imposed a broad stay protecting of the Debtors and the Non-Debtor Stay Parties and their assets. Commencement or continuation of litigation against the Debtors or and Non-Debtor Stay Parties and their assets in the United States violates this stay. The requested relief is, therefore, among other things, in aid of the requirements of the Initial Order granted in the Canadian Proceedings by the Canadian Court.

### C.  The Requested Relief Meets the Standard for a Preliminary Injunction.

17.     Provisional relief under chapter 15 of the Bankruptcy Code is conditioned on a foreign representative demonstrating that a debtor meets the standards applicable to an injunction. *See* 11 U.S.C. § 1519(e); *In re Innua Canada Ltd.,* No. 09-16362, 2009 Bankr. LEXIS 994, at *9-12 (Bankr. D.N.J. Mar. 25, 2009) (ordering provisional stay applying section 362(a) where provisional stay necessary to prevent "further dissipation of assets"). Courts have held that "where there is a showing that the action sought to be enjoined would . . . burden, delay or otherwise impede the reorganization proceedings or if the stay is necessary to preserve or protect the debtor's estate or reorganization prospects, the [Court] may issue injunctive relief." *See In re Alert Holdings Inc.,* 148 B.R. 194, at *12 (Bankr. S.D.N.Y. 1992).

18.     In the Third Circuit, that standard requires a movant to show that: (a) it has a likelihood of success on the merits; (b) it will suffer irreparable harm if the requested injunction is denied; (c) granting preliminary relief will not result in greater harm to the nonmoving party; and (d) the public interest favors such relief. *See Kos Pharm., Inc. v. Andrx Corp.,* 369 F.3d 700,

708 (3d Cir. 2004); *In re Nortel Networks UK Ltd.,* 538 B.R. 699, 704–05 (Bankr. D. Del. 2015) (citing *United States v. Bell,* 414 F.3d 474, 478 n.2 (3d Cir. 2005)); *see also Rogers v. Corbett,* 468 F.3d 188, 192 (3d Cir. 2006). Immediate provisional relief is appropriate here as the Debtors satisfy this standard.

> ii.   *There is a Substantial Likelihood of Recognition of the Canadian Proceedings as Foreign Main Proceedings and Entitlement to Additional Requested Bankruptcy Code Relief.*

19.    As detailed more fully in the Verified Petition, the Recognition Motion, and the Declarations, the Canadian Proceedings are "foreign proceedings" as defined in section 101(23) and each of the Debtors is a proper debtor in that foreign proceeding in Canada. The Debtors have set forth a compelling case for recognition of the Canadian Proceedings as foreign main proceedings. *See* Hargreaves Decl., ¶¶ 127-138; Bornstein Decl., ¶¶ 11-33. The Canadian Proceedings for the Canadian Debtors are "foreign main proceedings" by virtue of the presumption under section 1516. For those Debtors that are formed under U.S. law, each business is fully integrated with those Canadian entities in Canada, and are entirely managed in Canada. Such evidence rebuts any presumption their center of main interest is not in Canada. Thus, the Canadian Proceedings should—and likely will be—be recognized as foreign main proceedings.

20.    BP Holdco is a "foreign representative" as defined in section 101(24). In addition, these Chapter 15 Cases were duly and properly commenced by filing the verified chapter 15 petitions accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules including:

(a)  a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1;

(b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtors, (ii) all parties to litigation pending in the United States in which the Debtors are a party at the time of the filing of the Verified Petition, and (iii) all entities against whom provisional relief is being sought under section 1519;

(c) a statement identifying all foreign proceedings with respect to the Debtors that are known to the Monitor; and

(d) a certified[4] copy of the Initial Order.

21.    Upon recognition of the Canadian Proceedings as foreign main proceedings, section 362 will automatically apply in these Chapter 15 Cases pursuant to section 1520(a)(1). *See* 11 U.S.C. § 1520(a)(1). The Foreign Representative has requested relief to stay the commencement or continuation of any individual actions or proceedings against the Non-Debtor Stay Parties and staying the execution against the Non-Debtor Stay Parties' assets, which is discretionary relief available under section 1519(a). Such relief is consistent with the legislative history of section 362 which notes that "[t]he court has ample other powers to stay actions not covered by the automatic stay. . . . Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions." 124 Cong. Rec. H 11092, H 11093 (Sept. 28, 1978). This, together with the fact that section 1519(a) sets forth a non-exclusive list of relief available to a foreign representative upon filing a chapter 15 petition, there is ample reason for this Court to exercise its discretion to ensure the status quo remains in place until it can conduct a hearing on

---

[4] Due to the time of the hearing, the Debtors were not able to obtain a certified copy of the Initial Order; however, the Debtors provided the order as entered and will fill a supplemental notice attaching the certified copy of the Initial Order once they are able to obtain one.

the Recognition Motion. *See In re Pro-Fit Holdings, Ltd.,* 391 B.R. at 867 ("The court concludes

that sufficient authority exists under §§ 1519(a), 105(a). and 105(d) for the adoption of § 362

provisionally in these cases, to apply to all of the debtors' property in the United States pending

a ruling on recognition of the foreign proceedings relating to the debtors herein."); *In re Andrade*

*Gutierrez Engenharia S.A.,* 645 B.R. 175, 181 (Bankr. S.D.N.Y. 2022) ("In the cross-border

insolvency context, courts have recognized that irreparable harm exists when local actions could

hinder the orderly process of a foreign proceeding and the goal of fair distribution of assets.")

(citations omitted).

22.    Furthermore, there is an equally compelling case for this Court to enforce the DIP

Loan Agreement to extent the finalized facility provides liens set forth therein to the Debtors'

Property (as defined in the Initial Order) located in the United States. Pursuant to section

1519(a)(3), a foreign debtor is entitled to relief available to a trustee under section 1521(a)(7). A

trustee is entitled to seek the protections under section 364; therefore, the Debtors may seek, and

this Court may grant, similar protections to the Debtors as a matter of provisional relief in these

cases. Such relief is required because without these security interests, the DIP Lender will not

provide the Debtors access to severely-needed liquidity under the DIP Facility, and the Debtors

need access to the DIP Facility funds to maintain operations while they work with their

stakeholders regarding a proposed restructuring and court-supervised sale process in the Canadian

Proceedings under the CCAA that maximizes the value of the Debtors' assets. *See* Hargreaves

Decl., ¶ 23.

23.    Finally, the Debtors have met the standard for extension of the stay to the Non-

Debtor Stay Parties. Courts in this District generally consider two factors:

> to determine whether an injunction seeking to expand the protections of the
> automatic stay to nondebtor parties under §105(a) is appropriate are: (1) whether

> the nondebtor and debtor share an identity of interest such that a suit against the nondebtor is essentially a suit against the debtor and (2) whether the third-party action will have an adverse impact on the debtor's ability to accomplish reorganization.

*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)*, Bankr. No. 01-01139, Adv. No. A-01-771, 2008 Bankr. LEXIS 1048, at *36 (Bankr. D. Del. Apr. 11, 2008) (citing *In re Prussia Assoc.*, 322 B.R. 572, 599 (Bankr. E.D. Pa. 2005) and *Rickel Home Ctrs. v. Baffa (In re Rickel Home Ctrs.)*, 199 B.R. 498, 500-01 (Bankr. D. Del. 1996)). "This is often referred to as the 'unusual circumstances' test." *Id.* (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). Here, the Canadian Court found it necessary to extend the stay of proceedings to the Non-Petitioner Stay Parties to effectuate the relief requested under the CCAA and to complete to proposed restructuring and sale process in the Canadian Proceedings. The Court should likewise find it appropriate to extend the stay under section 362 to the Non-Debtor Stay Parties to mirror the relief provided in the Initial Order. *See, e.g., In re Biosteel Sports Nutrition Inc.*, No. 23-90777 (DRJ) (Bankr. S.D. Tex. Oct. 11, 2023) [D.I. 46] (recognizing Canadian court orders granting non-debtor stay). Without the extension of the stay under section 362 to the Non-Debtor Stay Parties, it will create an inconsistency between the Chapter 15 Cases and the Canadian Proceedings and could lead to a breach of the DIP Loan Agreement, which requires that no new liens are filed against the Non-Debtor Stay Parties' Property.

*iii. The Debtors Will Suffer Irreparable Harm Without Provisional Relief.*

24.     Without the immediate injunctive relief under sections 362 and 364, the Debtors risk irreparable harm to their reorganization proceedings in Canada. These Chapter 15 Cases were commenced for the purpose of obtaining the assistance of this Court in respect of the Canadian Proceedings and to give effect in the United States to the Initial Order of the Canadian Court.

25.     As noted in the Declarations and in the Verified Petition, many of the Debtors are incorporated or have operations in the United States. Two of the Debtors' primary lines of business, including the Hawaiian and Washington-Alaska businesses, operate in the United States. *See* Hargreaves Decl., ¶ 5. The Non-U.S. Debtors are connected to the United States through their affiliates. *See* Hargreaves Decl., ¶¶ 27-38.. Each of the Debtors has creditors and/or pending litigation located within the territorial jurisdiction of the United States. Moreover, the Debtors and the Non-Debtor Stay Parties are jointly and severally liable to certain creditors in the U.S. and Canada. *See* Hargreaves Decl., ¶¶ 73-79, 93-104. Unless the Provisional Relief is granted and all creditors and litigation parties are enjoined, the Debtors face the risk that certain parties may attempt to take enforcement actions to recover against the Debtors' U.S. assets.

26.     To the extent the PBGC is not prevented from exercising remedies, it may take actions designed to elevate its purported USD$44.2 million unsecured claim to secured status, thereby preventing the Debtors from having access to DIP Financing vital to value maximization. Likewise, to the extent other parties unilaterally pursue collection or enforcement efforts, such actions could diminish the value of the Debtors' assets and cause significant delay and disruption to the Debtors' restructuring process. The relief requested in this Motion is necessary to prevent this irreparable harm. One of the fundamental purposes of chapter 15 is to provide such protection by, among other things, ensuring that all creditors of a debtor are enjoined from acting against the debtor's assets, thereby preventing some creditors from getting an unfair advantage over others. *See* 11 U.S.C. § 1501. As the *Pro-Fit Holdings Ltd.* court observed, "[t]he stay under § 362 is fundamentally different in several respects from an injunction. Perhaps the most important difference is that the stay is *in rem:* its purpose is to protect property that is in *custodia legis* in consequence of the bankruptcy filing. . . . it is not directed to a party in litigation, or even to any

particular person." *In re Pro-Fit Holdings Ltd.,* 391 B.R. at 864. In a chapter 15 case, the property is under the jurisdiction of the Canadian Court, and this Court has the discretion to impose a limited stay in the territorial jurisdiction of the United States to assist the Canadian Court's administration of the Canadian Proceedings. Chapter 15 provides appropriate safeguards for the imposition of this stay on a provisional basis: first, it is temporary; and second, any party subject to the provisional stay is sufficiently protected as it can participate in the Canadian Proceedings. *See In re Andrade Gutierrez Engenharia S.A.,* 645 B.R. at 184 (holding that rights of creditor are sufficiently protected when it will be able to participate in foreign proceeding that will provide comprehensive restructuring of claims).

27.     Several courts have recognized the need to provide provisional relief to ensure the orderly distribution of a debtor's assets in a single proceeding and prevent piecemeal enforcement against a debtor's assets across multiple jurisdictions. *See, e.g., In re Energy Coal S.P.A.* 582 B.R. 619, 626–27 (Bankr. D. Del. 2018) (stating that harm to estate exists where orderly determination of claims and fair distribution of assets are disrupted); *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.,* 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group"); *In re Lines,* 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988) (stating that "premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury").

28.     Here, as described in the Hargraves Declaration, PBGC asserts that the Debtors are liable to PBGC for, among other things, the unfunded benefit liabilities of the Akron Plan. Based on these purported liabilities, the PBGC may seek to obtain a lien in favor of PBGC in the

amount of such purported liabilities by providing notice and making a demand for payment.[5] 29 U.S.C. § 1368(a); *see also* 29 U.S.C. § 1368(c) (providing that lien would be treated as federal tax). While PBGC has not yet made a formal demand, the Debtors believe there is a significant risk that PBGC will file liens against Debtors' assets. The filing of such a lien would result in a breach of the DIP Loan Agreement, which represents a significant threat to the Debtors' ability to complete the SISP or proceed in the Canadian Proceedings.

29.     Additionally, the Debtors will suffer immediate and irreparable harm if they cannot access the funding made under the DIP Facility. As described in the Declarations, the Debtors continue to operate despite dwindling liquidity and require access to the DIP Loan to fund operations and the costs of administering the Canadian Proceedings and these Chapter 15 Cases. *See* Hargreaves Decl., ¶ 116(e). Bankruptcy courts routinely defer to a debtor's business judgment on most business decisions, including the decision to borrow money. *See In re Hamilton Square Assocs.*, No. 91-14720S, 1992 Bankr. LEXIS 705, at *4 (Bankr. E.D. Pa. May 5, 1992) (holding that "debtor-in-possession['s] . . . business judgments must be accepted if reasonable"). Courts generally would not second guess a debtor-in-possession's business decisions when those decisions involve "a business judgment made in good faith, upon a reasonable basis, and within the scope of his authority under the Code." *In re Curlew Valley Assocs.,* 14 B.R. 506, 513-14 (Bankr. D. Utah 1981) (footnotes omitted).

30.     The Debtors, in the exercise of their prudent business judgment and consistent with their fiduciary duties, have concluded that the DIP Facility is necessary, and its terms and conditions are fair, reasonable, and the best available under the circumstances. In the absence of

---

[5] Following the demand, a notice of federal lien filing must be filed in the appropriate state office in the state in which the property subject to lien is situated. 29 U.S.C. § 1368(c)(3); 26 U.S.C. § 6323(f).

financing from the DIP Lender, the Debtors' operations may close resulting in devastating loss of value because the Debtors will not be able to fund the continued operation of their business in a manner that will permit its restructuring through the Canadian Proceedings and avoid irreparable harm. Also, the availability of sufficient working capital and liquidity from the DIP Lender is necessary to bolster the confidence of the Debtors' vendors and suppliers of goods and services to continue those services, as well as its customers and employees. Indeed, the preservation and maintenance of the going concern value of the Debtors' business is dependent upon access to the DIP Facility, which has been approved on an interim basis by the Canadian Court under the Initial Order.

31.    Similarly, as the Declarations detail, the Debtors are the largest fact-based news media publishers in many of the geographical locations in which they operate, many of which are rural and remote regions. For example, BP Hawaii's combined media products reach 67% of Hawaii's 1.1 million adult population. *See* Hargreaves Decl., ¶ 50. As of July 2023, BP Hawaii had 1.5 million monthly unique users on its websites and distributed approximately 900,000 printed newspapers on a weekly basis. *Id*. The loss of these services provided by the Debtors would be a great detriment to the general public in those areas. Accordingly, the Foreign Representative submits that there is a strong public interest in maintaining the Debtors as a going concern to facilitate the contemplated sale process in the Canadian Proceedings.

32.    Furthermore, the DIP Facility was negotiated in good faith and at arm's length by all parties involved and, accordingly, the DIP Loan should be deemed to have been extended in good faith, within the meaning of sections 363(m) and 364(e). It is clear that the DIP Lender has engaged in good faith efforts to facilitate the Debtors' restructuring efforts: as set forth herein and in the Declarations, the DIP Lender agreed prepetition to provide the Debtors with much-needed

liquidity at a critical juncture, which ensured the continuation of the Debtors' operations, preserved hundreds of jobs, and allowed the Debtors to bridge to a comprehensive restructuring or sale transaction.[6] As the financing under the DIP Facility has been extended in good faith, and for valid business purposes and uses, the DIP Lender is entitled to the protection available under sections 363(m) and 364(e) in these Chapter 15 Cases.

33.    Absent entry of the Provisional Relief Order granting the protections under section 364, as required by the DIP Lender and the DIP Loan Agreement, the Debtors will not be able to obtain needed funding under the DIP Facility. Bankruptcy courts in this District have granted similar relief in similar circumstances in other chapter 15 cases. *See, e.g., In re NextPoint Fin. Inc.*, No. 23-10983 (Bankr. D. Del. July 27, 2023) [D.I. 39] (order granting provisional relief including charges in favor of DIP lender); *In re Acerus Pharms. Corp.,* No. 23-10111 (Bankr. D. Del. Jan. 31, 2023) (granting provisional DIP relief in chapter 15 case) [D.I. 42]; *In re Yatsen Grp. of Cos. Inc.,* No. 21-10073 (Bankr. D. Del. Jan. 27, 2021) [D.I. 23] (same); *In re Hematite Holdings Inc.,* No. 20-12387 (Bankr. D. Del. Oct. 1, 2020) [D.I. 26] (same); *In re The Aldo Grp. Inc.,* No. 20-11060 (Bankr. D. Del. June 3, 2020) [D.I. 66] (same); *In re Cinram Int'l Inc.,* No. 12-11882 (Bankr. D. Del. June 26, 2012) [D.I. 98]; *In re Arctic Glacier Int'l Inc.,* No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (same).

34.    Accordingly, the Foreign Representative respectfully requests that the Court (i) recognize, on a provisional basis pursuant to section 1519 , the DIP Lender's Charge and any other liens and charges negotiated in connection with the DIP Facility as approved by the Canadian Court and (ii) afford the DIP Lender the protections available under section 364 with

---

[6] An affiliate of the DIP Lender has also agreed to serve as stalking horse bidder in the proposed sale and marketing process for the Debtors' assets.

respect to the Debtors and their property located in the territorial jurisdiction of the United States. The Foreign Representative similarly requests that the Court recognize, on a provisional basis, the Administration Charge and Directors' Charge.

### iv.  Provisional Relief Will Benefit Creditors.

35.     The Debtors' creditors, as a whole, will benefit if the relief sought in the Motion is granted because the status quo will be maintained through enjoinment of any action until the hearing on recognition. *See In re Innua Canada*, 2009 Bankr. LEXIS 994, at *9-12 (finding that temporarily maintaining status quo pending recognition the foreign proceedings served to benefit creditors "by allowing for an orderly administration of the debtors' financial affairs under the Canadian proceeding," tipping balance of harms in favor of foreign representative). The Provisional Relief will benefit the Debtors' creditors by ensuring an equitable and orderly distribution of assets and facilitate the Canadian Proceeding. *See, e.g., In re Basis Yield Alpha Fund (Master),* No. 07-12762 (Bankr. S.D.N.Y. Aug. 29, 2007) [D.I. 5] (stating that failing to issue restraining order against creditors could "undermine the Foreign Representative's efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors.").

36.     Further, with funding from the DIP Facility, the Debtors will continue to finance their operations while the Foreign Representative and Debtors pursue the reorganization and sale process in the Canadian Proceedings. The relief requested in this Motion is intended to be temporary, extending only through the disposition of the Verified Petition and Recognition Motion. Moreover, the Provisional Relief Order specifically provides that any creditor that believes it has been harmed by the Provisional Relief may file a motion with the Court seeking relief from the Provisional Relief Order. Granting the request for provisional relief will benefit

the Debtors' creditors because it will ensure the value of the Debtors' assets is preserved, protected, and maximized for the benefit of, and fair distribution to, all creditors.

*v.  The Public Interest Favors Granting Provisional Relief.*

37.     Finally, granting the relief requested in this Motion is in the public interest. The injunctive relief will aid the Canadian Proceedings and is consistent with the stay provisions of the Initial Order, which are currently in effect as to the Debtors and their assets. As such, the requested relief is entirely consistent with the purpose of chapter 15, namely:

> to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency with the objectives of–

(1)  cooperation between . . . (A) Courts of the United States, United States trustees, trustees, examiners, debtors, and debtors in possession; and (B) the courts and other competent authorities of foreign countries involved in cross-border insolvency cases;

(2)  greater legal certainty for trade and investment;

(3)  fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities including the debtor;

(4)  protection and maximization of the value of the debtor's assets; and

(5)  facilitation of the rescue of financially troubled businesses, thereby protecting investment and preserving employment.

11 U.S.C. § 1501(a); *In re Andrade Gutierrez Engenharia S.A.,* 645 B.R. at 183 ("Staying the Trustee Litigation will ensure that the Brazilian EJ Plan has the best chance of succeeding, which aligns with Chapter 15's goal to foster the "fair and efficient administration of cross-border insolvencies that protects the interests of all creditors" pursuant to 11 U.S.C. § 1501(3)."); *see also In re ABC Learning Ctrs. Ltd.,* 728 F.3d 301, 306 (2013) (emphasizing that chapter 15 serves "universalism" approach to transnational bankruptcy, preferring that U.S. courts act in aid of

foreign proceedings); *In re Innua Canada*, 2009 Bankr. LEXIS 994, at *11-12 (agreeing that provisional stay applying section 362(a) serves "express purposes of Chapter 15 found at section 1501" and ordering stay); *In re SPhinX, Ltd.,* 351 B.R. 103, 112 (S.D.N.Y. 2006); *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 374 B.R. 122. at 126 (S.D.N.Y.2007).

38.      Consequently, the Provisional Relief is consistent with the policies underlying the Bankruptcy Code, including the provision of a breathing spell for a debtor and the equitable treatment of all creditors. *See Cornfeld v. Invs. Overseas Servs., Ltd.,* 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) ("American public policy would be furthered, for the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."). Additionally, granting the requested relief is in the public interest because it will facilitate the Debtors' efforts to complete a court-supervised restructuring for the benefit of their creditors and other stakeholders—including those in the United States. *See Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.),* 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *Am. Film Techs, Inc. v. Taritero (In re Am. Film Techs., Inc.),* 175 B.R. 847, 849 (Bankr. D. Del. 1994) ("It is 'one of the paramount interests' of this court to assist the Debtor in its reorganization efforts.") (*quoting Gathering Rest., Inc. v. First Nat'l Bank of Valparaiso (In re Gathering Rest., Inc.),* 79 B.R. 992, 999 (Bankr. N.D. Ind. 1986)); *In re Lazarus Burman Assocs.,* 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization.").

39.      As described above and in the Hargreaves Declaration, the Debtors are the primary source of printed fact-based news media in many of the geographical locations in which they

21

operate, many of which are rural and remote regions. Accordingly, the Foreign Representative submits that there is a considerable public interest in protecting the restructuring and sale efforts in the Canadian Proceedings so the public is not deprived of a primary source of printed fact-based news.

40.     Moreover, granting provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15. *See* 11 U.S.C. § 1501(a). The Provisional Relief will facilitate a cross-border reorganization that will provide a benefit to the Debtors' creditors. *See, e.g., Cunard S.S. Co. Ltd. v. Salen Reefer Servs. A.B.,* 773 F.2d 452, 458 (2d Cir. 1985) ("The granting of comity to a foreign bankruptcy proceeding enables the assets of a debtor to be dispersed in an equitable, orderly, and systematic manner, rather than in a haphazard, erratic or piecemeal fashion.").

41.     For these reasons, courts in this District have frequently granted requests for similar provisional relief in chapter 15 cases. *See, e.g., In re NextPoint Fin. Inc.*, No. 23-10983 (Bankr. D. Del. July 27, 2023) [D.I. 39] (order granting provisional relief, including application of section 362); *In re CDS U.S. Holdings, Inc.,* No. 20-11719 (Bankr. D. Del. July 2, 2020) [D.I. 37] (same); *In re The Aldo Grp., Inc.,* No. 20-11060 (Bankr. D. Del. May 8, 2020) [D.I. 29] (order granting provisional relief, including recognition and enforcement of Initial Order entered in Canadian proceeding and application of sections 362 and 364); *In re Energy Coal S.P.A.*, No. 15-12048 (Bankr. D. Del. Oct. 7, 2015) [D.I. 22] (order granting provisional relief, including application of section 362 and 364); *In re Lone Pine Res. Inc.*, No. 13-12487 (Bankr. D. Del. Sept. 26, 2013) [D.I. 18] (order granting provisional relief, including recognition and enforcement of Initial Order entered in the Canadian proceeding, and application of section 362); *In re Arctic Glacier Int'l Inc.*, No. 12-10605 (Bankr. D. Del. Feb. 23, 2012) [D.I. 28] (order granting

provisional relief, including recognition and enforcement of Initial Order entered in Canadian proceeding, and application of sections 362 and 364(e)).

*vi. The Petitions for Recognition Satisfy all the Requirements Under Section 1515.*

42.    These Chapter 15 Cases were duly and properly commenced by filing the Verified Petition, accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules.

43.    Because the petitions for recognition satisfy section 1517, the Court should recognize the Canadian Proceedings in these Chapter 15 Cases. Moreover, granting recognition will promote the United States public policy of respecting foreign proceedings as articulated in, among other things, sections 1501(a) and 1508 and further cooperation between courts to the maximum extent possible as mandated by section 1525(a). Thus, these circumstances satisfy the conditions for mandatory recognition of the Canadian Proceedings under section 1517.

44.    Accordingly, the relief requested herein will further the objectives of chapter 15 by assisting the implementation and administration of the Canadian Proceedings.

*vii. The Debtors are Not Required to Provide Security.*

45.    Security is not required for the Provisional Relief under the Bankruptcy Rules. *See* Fed. R. Bankr. P. 7065 ("[A] temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)['s requirement to give security]"). The Court has "wide discretion to set the amount of a bond [under Rule 65(c)], and even to dispense with the bond requirement." *Doctor's Assocs. v. Distajo,* 107 F.3d 126, 136 (2d Cir. 1997). Accordingly, the Court may, but does not have to, require the Foreign Representative to give security. Requiring security would be unwarranted in the present

23

circumstances as the Provisional Relief would last only until this Court's ruling on recognition of the Canadian Proceedings. *See* 11 U.S.C. § 1520(a)(1).

>        *viii.    The Requirements of Bankruptcy Rule 1007(a)(4)(B) Should Be Waived.*

46.    Contemporaneously with the filing of the Motion, the Foreign Representative filed the Lists pursuant to Bankruptcy Rule 1007(a)(4) (the "Bankruptcy Disclosures"). Among other things, Bankruptcy Rule 1007(a)(4)(B) requires a list of all entities against whom provisional relief is being sought under section 1519, unless the Court orders otherwise. As set forth herein and as reflected in the Bankruptcy Disclosures, the Foreign Representative seeks provisional application of the automatic stay under section 362 that would specifically affect a number of parties. The relief sought herein could likewise affect other parties to the extent such parties could seek to commence litigation against the Debtors or the Non-Debtor Stay Parties or enforce against their property. *See In re Andrade Gutierrez Engenharia S.A.,* 645 B.R. 175, 184 (Bankr. S.D.N.Y. 2022) (holding that foreign representative cannot be expected to anticipate every potential party that could seek to bring claims against them in United States).

47.    The Bankruptcy Disclosures are sufficient to satisfy Bankruptcy Rule 1007(a)(4)(B). However, in an abundance of caution, and given that other, unknown parties may be affected, the Foreign Representative also requests that the Court waive any further requirement under Rule 1007(a)(4)(B) with respect to the provisional relief sought by this Motion.

>    **D.    In the Alternative, the Court should Grant the Canadian Court Comity and Impose Provisional Relief.**

48.    The Provisional Relief also comports with the long-standing policy of extending comity to foreign jurisdictions and promoting cooperation between jurisdictions in cross-border insolvency proceedings. *See* 11 U.S.C. § 1501(a); *Cornfeld v. Inv. Overseas Servs., Ltd.,* 471 F. Supp. 1255, 1259 (S.D. N.Y. 1979) (stating that recognizing Canadian liquidation proceeding

would further "American public policy" because "firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction"); 11 U.S.C. § 1508 ("In interpreting [chapter 15], the court shall consider its international origin, and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions.").

49.     When the United States adopted chapter 15, it included references to "comity" because as U.S. insolvency law evolved in the later part of the twentieth century, it became clear that "comity is the central consideration in determining whether to provide relief to a foreign insolvency representative." *See* Burton Lifland, *Chapter 15 of the United States Bankruptcy Code: An Annotated Section-By-Section Analysis,* in CROSS-BORDER INSOLVENCY AND CONFLICT OF JURISDICTIONS A US-EE EXPERIENCE (Georges Affaki, ed. 2007), at 31, 45; *see also* Samuel L. Bufford, UNITED STATES INTERNATIONAL INSOLVENCY LAW 2008-2009 (2009), at 33 ("Chapter 15 appears to restrict the role [of] comity, and provides for it only in the context of a court's decision to provide additional assistance to a foreign representative under § 1507. However, comity continues to play a large role in the context of transnational insolvency cases and chapter 15 . . . [and] its influence in chapter 15 is pervasive."). Thus, chapter 15 of the Bankruptcy Code modified Articles 7 and 9 of the Model Law to include references to comity. Section 1507 provides that "[i]n determining whether to provide additional assistance under this title or under other laws of the United States, the court shall consider whether such additional assistance, consistent with the principles of comity," will reasonably assure compliance with a list of factors. Chapter 15 of the Bankruptcy Code has expressly imported the concept of comity, and, thus, at least for the provisional period, it would be appropriate for this Court, in reliance on its

general equitable powers in section 105, to impose the provisional relief here requested under general principles of comity.

50.    While the Bankruptcy Code does not define "comity," courts have explained the concept as a "recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protections of its laws." *Hilton v. Guyot,* 159 U.S. 113, 164 (1895). The principle of comity is used flexibly to guide a court's decision-making process as comity "is not a rule of law, but one of practice, convenience, and expediency." *Overseas Inns S.A. P.A. v. United States,* 911 F.2d 1146, 1148 (5th Cir. 1990) (quotation marks and citation omitted). "[C]omity compels national courts to act at all times to increase the international legal ties that advance the rule of law within and among nations . . . [C]omity serves our international system like the mortar which cements together a brick house. No one would willingly permit the mortar to crumble or be chipped away for fear of compromising the entire structure." *See Laker Airways Ltd. v. Sabena, Belg. World Airlines,* 731 F.2d 909, 937 (D.C. Cir. 1984). The Second Circuit Court of Appeals described comity as being "concerned with maintaining amicable working relationships between nations, a shorthand for good neighborliness, common courtesy and mutual respect between those who labor in adjoining judicial vineyards." *JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,* 412 F.3d 418, 423 (2d Cir. 2005).

51.    In short, "comity" is the principle that a court should defer to foreign laws or judgments of foreign courts out of respect for a foreign nation when the deferring court would normally take a different action with respect to the dispute at issue (of course if the deferring court would reach the same conclusion, comity is not necessary). *See* 6A NORTON BANKR. L. &

PRAC. 2d § 152:16 (1997-98) ("Because private international law is focused on the relationship between the person that has cross-border contacts, it is necessarily a set of principles designed to determine which nation's laws should apply to any given dispute. These principles govern the determination of whether comity should be extended to the non-U.S. proceedings, judgments or laws."). The application of comity "turns on the consideration of a number of facts that vary according to the specific facts and circumstances of each case. Thus, the appropriate weighting of foreign court decisions must be decided on a case-by-case basis." Bufford, *supra,* at 34-5 (citing *Laker Airways Ltd.,* 731 F.2d at 937); *see also Note: The Extension of Comity to Foreign Bankruptcy Proceedings:* Philadelphia Gear Corp. v. Philadelphia Gear de Mexico, S.A., 20 N.C. J. INT'L L. & COMM. REG. 629, 636 (1995) ("Because comity is an exercise of a court's discretion in light of the facts of the specific case, U.S. courts are free to balance potentially conflicting policy considerations and to deny comity to foreign bankruptcy proceedings").

52.     As explained in the Declarations, the Canadian Court presides over a process that the Debtors initiated to reorganize. The Canadian Court has entered the Initial Order granting, among other things, a stay on creditor actions against the Debtors and the Non-Debtor Stay Parties which is necessary to effectuate the Canadian Proceedings. The Foreign Representative respectfully submits to this Court that, in the alternative to granting provisional relief under section 1519, it should impose a provisional stay under the common law principles of comity to enable the Debtors adequate breathing space within the territorial jurisdiction of the United States so that they may continue to dedicate their resources and efforts to accomplishing their proposed restructuring through the Canadian Proceedings. In balancing the issues, the Foreign Representative submits that the limited relief sought, namely a stay for a short time until a final hearing, fits well within the legal doctrine of comity that has prevailed in the United States for at

least 120 years. For these alternative reasons, the Foreign Representative respectfully requests from the Court to grant the provisional relief requested in the Motion.

**IV.**     **CONCLUSION**

53.     For the reasons set forth in the Motion and Memorandum of Law, the Foreign Representative respectfully requests that (i) the Court immediately enter the TRO, substantially in the form attached to the Motion as **Exhibit A**, (ii) the Court enter the Provisional Relief Order, substantially in the form attached to the Motion as **Exhibit B**, following a hearing on the request for Provisional Relief, and (iii) the Court grant such other and further relief as necessary and appropriate.

*[intentionally left blank]*

Dated: January 15, 2024                    */s/ Stanley B. Tarr*
Wilmington, Delaware                       Stanley B. Tarr (DE No. 5535)
                                           Lawrence R. Thomas III (DE No. 6935)
                                           **BLANK ROME LLP**
                                           1201 N. Market Street, Suite 800
                                           Wilmington, Delaware 19801
                                           Telephone:      (302) 425-6400
                                           Facsimile:      (302) 425-6464
                                           *Stanley.Tarr@BlankRome.com*
                                           *Lorenzo.Thomas@BlankRome.com*

                                           -and-

                                           Michael B. Schaedle (pro hac vice pending)
                                           Evan J. Zucker (pro hac vice pending)
                                           **BLANK ROME LLP**
                                           1271 Avenue of the Americas
                                           New York, New York 10020
                                           Telephone:      (212) 885-5000
                                           Facsimile:      (212) 885-5001
                                           *Mike.Schaedle@BlankRome.com*
                                           *Evan.Zucker@BlankRome.com*

                                            -and-

                                           Sean A. Gordon (*pro hac vice pending*)
                                           Austin B. Alexander (*pro hac vice pending*)
                                           **THOMPSON HINE LLP**
                                           Two Alliance Center
                                           3560 Lenox Road NE, Suite 1600
                                           Atlanta, Georgia 30326-4266
                                           Telephone: (404) 541-2900
                                           Facsimile: (404) 541-2905
                                           *Sean.Gordon@thompsonhine.com*
                                           *Austin.Alexander@thompsonhine.com*

                                           Curtis L. Tuggle (*pro hac vice pending*)
                                           Alexander J, Andrews (*pro hac vice pending*)
                                           **THOMPSON HINE LLP**
                                           300 Madison Avenue, 27th Floor
                                           New York, New York 10017-6232
                                           Telephone: (212) 908-3994
                                           Facsimile: (212) 344-6101
                                           *Curtis.Tuggle@thompsonhine.com*
                                           *Alexander.Andrews@thompsonhine.com*

                                           *Counsel to the Foreign Representative*

29